# Young, Appellant, *v.* Senft.

*Ejectment—Evidence—Wife—Title of husband—Act, May 23, 1887.*

Where an action of ejectment is brought against a husband and wife by a sheriff's vendee of land sold as the property of the husband, but claimed by the wife, where both defendants join in an abstract of title in which the wife is alleged to be the owner of the property, the wife is a competent witness. She was not called to testify against her husband or against his title.

*Husband and wife—Sale of wife's property for husband's debt—Title—Estoppel.*

Where land is bought with a wife's money, but the deed is taken without her knowledge in her husband's name, and subsequently she discovers the mistake and promptly insists upon a conveyance to herself, the property cannot be sold for a debt of the husband contracted during the time in which the property stood in his name.

It seems that if, instead of promptly insisting upon a conveyance to

herself, she allows the title to remain in her husband until after he contracts a debt, she will be estopped as against that creditor from denying the title of her husband.

Argued Nov. 5, 1892. Appeal, No. 218, Oct. T., 1892, by plaintiff, A. B. Young et al., from judgment of C. P. No. 2, Allegheny Co., April T., 1891, No. 843, on verdict for defendants, Frederick Senft and Mary Senft, his wife. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment for thirteen acres of land.

While the suit was pending, Frederick Senft, one of the defendants, and Mary Young, the plaintiff, died, and in place of the latter were substituted her heirs, A. B. Young and J. C. Young.

At the trial, before WHITE, J., it appeared that the land in controversy was bought by plaintiff at a sheriff's sale in 1891, where it was sold as the property of Frederick Senft.

Defendant offered to testify that she was the owner of property in Pittsburgh, in 1855, which had been conveyed to her by James Barr, that she continued to be the owner of that property until the year 1866; that in that year she conveyed said property to Frederick Gedikoe by deed dated June 18, 1861, for the consideration of $6,000; that the money so paid by the sale to Gedikoe, from time to time, was used in the purchase of the property in dispute in this case; that the deed from Tidball and the deed from Edmundson was taken in the name of Frederick Senft, without her knowledge or consent, and that when she discovered the fact she requested the title to be put in her name, because it was her own money that had paid for it, and that in compliance with that request the deed to Michael Rodgers by Frederick Senft, already in evidence, and the deed by Rodgers to her, already in evidence, were made.

Plaintiff objects to the witness testifying in the case, for the reason that it appears that she is a party claiming an interest adverse to the title of her husband, Frederick Senft, whose title we have by the act of law acquired and is in evidence, she being excluded as a witness by the provision of the act of 23d of May, 1887, and also that the testimony proposed to be given is incompetent and irrelevant, and especially that it would not lie with-

in her mouth to show by the facts as stated that she had such a title as she now sets up against the creditors of her husband, whose interests are through the property which was sold to pay his debts, and title thereby acquired by the plaintiff in this action. Objection overruled and exception. [3]

The court charged in part as follows:

" The tract consists of two pieces, one was bought in 1866, the other part, and a smaller piece, bought in 1873. The first purchase was from a man by the name of Tidball, and the consideration for that purchase was $5,000. The second piece—the smaller one—was bought from Edmundson in 1873, and the consideration of that was $500, the consideration then of the two pieces, or of the whole tract now in dispute, $5,500. [In 1879 Frederick Senft made a deed to a man by the name of Rogers, who immediately transferred the title to Mrs. Senft, who is now the defendant. This deed was put on record, and was on record from 1879 until 1891, the time of the sheriff's sale, and when Mrs. Young bought the property at sheriff's sale. She is presumed in law to have known of that deed, and to know all that is recited in that deed. In the recital it sets forth—I mean the deed from Frederick Senft to his wife—that the property in Robinson township was bought with the money of his wife, and that the deed was made to him inadvertently and ought to have been made to his wife, and that this deed in 1879 is executed so that the title would be in the wife, as she was really the owner of the property. I say that when Mrs. Young bought at sheriff's sale in 1891 she is presumed in law to know of the recitals in that deed.] [11] Those recitals, however, are not conclusive against her. Being a voluntary deed, and from a man to a wife, she would have a right to call in question the validity of that deed, while it would be good against all the world, except the creditors of Senft at the time he made that deed. A man may put property in the name of his wife, and if he has no creditors at the time it cannot afterwards be said that he had no right to put that title in his wife's name. It is done every day. Yet if he has creditors, if he owes anything, or is liable for anything, he cannot do it to the prejudice of those creditors. Now, the allegation here is that this was a voluntary conveyance by the husband to the wife, and would not be good against the bond that Frederick Senft

executed in 1872. If it had been to a stranger, for a valuable consideration, it would have conveyed the title clear of that bond, because, as I understand, the bond was not recorded. It was simply a liability on the bond, and being no notice to a purchaser, a purchaser for value in 1879 would have taken this property cleared entirely of this debt. But the conveyance, being a voluntary one to the wife, the burden of proof is on her to show that she was the person entitled to that property, and that that deed was for the considerations mentioned in the deed, and that is the great question in this case. Now the deed recites that the money that bought this property was hers. If it was, then, unless she knew at the time it was done, and abstained from saying anything until after the liability arose, it would be good. The first question is then, was this property paid for by the witness's money, and even if it was, a second question arises, to which I will refer presently, whether she knew at the time the deeds were executed that they were in the name of the husband. [Now, what is the evidence as to the money that bought this property in Robinson township? We have the fact in evidence, undisputed, that the property in Birmingham was in the name of the wife, and that property was sold in 1866 for $6,000, just a short time before this property was bought in Robinson township. Now, it does not matter, gentlemen, whether the wife earned the money that bought this property in Birmingham, or whether it was the husband's money. For the purpose of this case, we may admit that all the money that bought the lot and that built the house there was the husband's money. Still, if he permitted the title to be put in her name—done with his consent—it would be good against subsequent creditors. It would not be good against any creditors that he had at the time. We need not therefore inquire as to whether the money was earned by the wife and the children, or whether it was earned by the whole family. The husband permitted the title to be made to the wife, and was in the wife, and the debt on which the plaintiff claims title here did not exist at that time. Therefore Mrs. Senft had the legal valid title to that property in Birmingham, and she had the legal, valid and exclusive right to control the money after it was sold. It was her money—the $6,000 got from Gedikoe. Now what paid for this property in Robinson town-

ship? Did that money pay for it? She testifies it did, and
the son, although he did not see the money paid, said that it
paid for it, because there was no other money, and the counsel,
I believe, rather candidly admitted in his argument to you that
the proceeds of that lot in Birmingham paid for these two prop-
erties in Robinson township. Now the deed was taken in
the husband's name. If it was taken in his name without her
knowledge and consent, and her money paid for it, he, in law,
would be on the footing of a trustee of the title for her bene-
fit.] [9] He may not have intended to defraud her—hardly
presumable that he did think of defrauding his wife, but it
frequently happens that the husband thinks he ought to con-
trol the property of his wife, and then the title is made to the
husband where the wife's money pays for it. Sometimes in the
partition of estates where the wife has property—where she
has an interest in her father's estate—we have known cases
where the conveyance has been made to the husband in place
of the wife. In all such cases, where in equity it is the prop-
erty of the wife, although the title may be in the husband, he
is looked upon in law rather as a trustee for her, and she has
the right at any time to demand that the title be conveyed to
her. Now if the wife's money paid for this property in Robin-
son township, she is entitled to hold it, unless the deed was
made to her husband with her knowledge, or shortly after it
was made she knew that it was in her husband's name, and let
it stand in her husband's name until after her husband became
liable on the bond of Edmundson. If she did know that the
deeds were to her husband, and let it stand in the name of her
husband until after he became liable as one of the sureties of
Edmundson, she would then be estopped from setting up her
title, because it would then rather be a fraud, and that is the
second question for you to consider. Now it does not matter
that in 1879 she may have known of the liability of her hus-
band on the bond of Edmundson. The bond of Edmundson
was executed in 1872. Her husband became one of the sureties
on that bond. Now if she never discovered that the deeds
were to her husband until after that date, and as soon as she
found out that they were in her husband's name demanded the
transfer to her, although that may have occurred several years
before 1879, and in 1879, at the time the deeds were executed,

she may have known it, still if the liability had accrued before
she knew it, why she would have a right to insist upon her
rights, and the property be conveyed to her. That, I say, is
the point of time particularly you are to look at. Before 1872,
or at the time, did she know that these deeds—well, they could
not both have been at that time, because the second deed to
Senft was from Edmundson, in 1873—before these two deeds
were executed, did she know that the titles were in her hus-
band, and let it remain so until after he became liable on these
bonds? Or, it would be possible if she did not know that the
first deed was to her husband, and did know that the second
deed was to her husband at the time they were executed, she
might have a good title to the first piece, but not to the second,
but I do not understand there is any distinction between the two.

"Plaintiff's claim is that before 1872 she knew that the deeds
were in the name of her husband. Now, it is for you to say
what the evidence is on that point. You have the testimony
of the old lady, who says distinctly that she did not know it
for a good many years after the deeds were executed—several
years before 1879, and the son testified that it was a good many
years—he could not give the exact date; and the old lady says
she could not read English, that still she had the deeds and
they were in her drawer all the time, and when the son was
looking over the papers for some purpose—looking over these
deeds—then he discovered that the deeds, because he spoke of
both, and she spoke of both the deeds, were to the husband,
and as soon as she found that out, she says, she wanted her
husband to make her safe, and the son spoke to him. Some-
times he promised he would do it and sometimes he would not,
and finally the son insisted, and insisted very strongly in 1879,
that he ought to do right to his mother. Now, it may be true
that in 1879 they may have discovered his liability on the bond
of Edmundson, but if they did not know that until after 1873,
until after the second deed was executed, and as soon as they
did find it out insisted upon the husband making the convey-
ance, his delaying it until 1879 would not deprive her of her
rights. [If you find that the wife did not know that the deeds
were in her husband's name until after they were both exe-
cuted, and immediately asked her husband to make the convey-
ance, and the son did, and that the wife's money paid for the

property, then your verdict ought to be for the defendants.] [10] If you find, however, that it was not the wife's money that paid for the property, then your verdict ought to be for the plaintiff. Or, if you find that it was the wife's money that paid for these properties, yet, if at the time the deeds were executed to her husband she knew it, and let it remain so until after her husband became one of the sureties on the bond of Edmundson, then your verdict ought to be for the plaintiffs."

Plaintiff's points, inter alia, were as follows :

1. Request for binding instructions. Refused. [1]

" 2. Mary Senft, the defendant, was not a competent witness, and the jury should disregard her testimony, and without her testimony the jury should find for the plaintiffs." Refused. [2]

" 4. That the fact that property acquired by the earnings of Mary Senft, or by her and her husband, was conveyed to her in 1855, and after being improved by them was sold for $6,000 in 1866, did not give Mary Senft such a right in the proceeds of the said property as to impose a trust in her favor upon the title acquired by her husband in the Tidball purchase in 1866 by the use of said proceeds, and that property is to be treated as his property and subject to his debts and liabilities, and Mary Young acquired such title through the debt, judgment, assignment and sheriff's sale in evidence, and is entitled to recover in this action. *Answer :* I will refuse all points, except the fourth, which I will affirm as to any debts of Frederick Senft existing at that time, but it would not avail against subsequent liabilities of Frederick Senft, and except the ninth point, which I will affirm." [8]

" 5. The fact that the Tidball purchase was by a deed to Frederick Senft, and that it was upon time as to a part of the purchase money, and that Mary Senft, his wife, had possession of the deeds from that time, it must be presumed that she knew the deed was in her husband's name, and that it so remained from 1866 to 1879, during which time he had incurred a liability upon which, by due process of law, the plaintiff has acquired a title, and she is estopped from setting up title in this action upon the claim that her money paid for the property." Refused. [5]

" 6. The defendant has shown no evidence of any mistake in the execution of either the Tidball or the Edmundson pur-

chase in the name of Frederick Senft, and therefore the jury should find for the plaintiff as to both properties." Refused. [6]

" 7. The defendant must sustain her defence by adequate proof to sustain an equitable title as against her husband's legal title, and in this she has failed, and the jury should find a verdict for the plaintiff." Refused. [7]

" 8. The jury should under the evidence presume that Mary Senft knew her husband had taken the title of the land in dispute in his name." Refused. [4]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–11) rulings and instructions, quoting instructions and bill of exception, but not evidence.

*M. A. Woodward*, for appellant.—Mrs. Senft was an incompetent witness: Hess v. Gourley, 89 Pa. 195; Henry v. Com., 107 Pa. R. 361; Karns v. Tanner, 66 Pa. 297; Murray v. N. Y. R. R., 103 Pa. 37; McLaughlin v. Fulton, 104 Pa. 169; Wall v. Staley, 91 Pa. 27.

The property was not acquired with the wife's money: Bucher v. Ream, 68 Pa. 426; Raybold v. Raybold, 20 Pa. 311; Robinson & Co. v. Wallace, 39 Pa. 129; Lockman v. Brobst, 102 Pa. 486; Baringer v. Stiver, 49 Pa. 129; Leinbach v. Templin, 105 Pa. 525. Mrs. Senft is estopped to deny her husband's title: Ward v. Biddle, 35 Leg. Int. 420.

*J. S. Ferguson, E. G. Ferguson* and *Henry Meyer* with him, for appellee, cited Van Horne v. Clark, 126 Pa. 411.

PER CURIAM, January 3, 1893:

We find nothing to criticise in the rulings of the learned judge below, either upon the points submitted, or in his general charge. Nor do we think that Mary Senft was an incompetent witness. Her case does not come within any of the exceptions of any of the acts of assembly, relating to the competency of witnesses, nor do we think it comes within their spirit. She was not called to testify against her husband, or against his title. The plaintiff made both Frederick Senft, and his wife, defendants. They both joined in and filed an abstract of title by which they both alleged that Mary Senft was the lawful owner of the property in dispute. It will be

noticed that no objection was made to the witness by reason of the death of Mary Young, the original plaintiff. The case closely resembles that of Van Horne v. Clark, 126 Pa. 411.

Judgment affirmed.